1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CECILIO ALANIZ, JR.,<br><br>Defendant. | No.  15-cr-00329-DAD-BAM<br><br>ORDER DENYING DEFENDANT CECILIO ALANIZ, JR.'S MOTION FOR MODIFICATION OF SENTENCE UNDER 18 U.S.C. § 3582(c)(1)(A)<br><br>(Doc. No. 169) |

18    Pending before the court is defendant Cecilio Alaniz Jr.'s motion seeking a reduction of

19  his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A), based in part on the risks posed to him by the

20  ongoing coronavirus ("COVID-19") pandemic.  (Doc. No. 169.)  For the reasons set forth below,

21  defendant's motion will be denied.

22                                        **BACKGROUND**

23    On September 10, 2018, after pleading guilty to conspiracy to distribute and possess with

24  intent to distribute methamphetamine in violation of 21 U.S.C. §§ 846 and 841(a)(1), defendant

25  Alaniz was sentenced to 78 months of imprisonment in the custody of the U.S. Bureau of Prisons

26  ("BOP"), followed by a 36-month term of supervised release.  (Doc. Nos. 94, 95.)  Defendant is

27  currently serving his sentence at the Federal Correctional Institution, Lompoc ("FCI Lompoc").

28  (*See* Doc. No. 169 at 3.)

On May 7, 2020, defendant filed the pending motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A).  (*Id.*)  On May 22, 2020, the government filed its opposition, and on May 29, 2020, defendant filed his reply.  (Doc. Nos. 171, 174.)

## LEGAL STANDARD

A court generally "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see also Dillon v. United States*, 560 U.S. 817, 824 (2010) ("'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances.").  Those limited circumstances include compassionate release in extraordinary cases.  *See United States v. Holden*, __ F. Supp.3d __, 2020 WL 1673440, at *2 (D. Or. April 6, 2020).  Prior to the enactment of the First Step Act of 2018 ("the FSA"), motions for compassionate release could only be filed by the BOP.  18 U.S.C. § 3582(c)(1)(A) (2002).  Under the FSA, however, imprisoned defendants may now bring their own motions for compassionate release in the district court.  18 U.S.C. § 3582(c)(1)(A) (2018).  In this regard, the FSA specifically provides that a court may

> upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf[1] or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, if it finds that –
>
> (i)   extraordinary and compelling reasons warrant such a reduction; or
>
> (ii)  the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section

---

[1] If the BOP denies a defendant's request within 30 days of receipt of such a request, the defendant must appeal that denial to the BOP's "Regional Director within 20 calendar days of the date the Warden signed the response." 28 C.F.R. § 542.15(a).  If the regional director denies a defendant's administrative appeal, the defendant must appeal again to the BOP's "General Counsel within 30 calendar days of the date the Regional Director signed." *Id.*  "Appeal to the General Counsel is the final administrative appeal." *Id.*  When the final administrative appeal is resolved, a defendant has "fully exhausted all administrative rights." *See* 18 U.S.C. § 3582(c)(1)(A).

3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission [.]

18 U.S.C. § 3582(c)(1)(A)(i) and (ii).[2]

The applicable policy statement with respect to compassionate release in the U.S. Sentencing Guidelines sets out criteria and circumstances describing "extraordinary and compelling reasons." U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 1B1.13[3]; *see also United States v. Gonzalez*, No. 2:18-cr-00232-TOR, 2020 WL 1536155, at *2 (E.D. Wash. Mar. 31, 2020) (noting that courts "universally" rely on U.S.S.G. § 1B1.13 to define "extraordinary

---

[2]  Under 18 U.S.C. § 3624(c)(2), the BOP may release an incarcerated defendant to home confinement "for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." The Coronavirus Aid, Relief, and Economic Security Act ("the CARES Act"), Pub. L. 116-136, expands the BOP's authority to release incarcerated defendants without judicial intervention. The CARES Act allows the BOP to "lengthen the maximum amount of time" for which a prisoner may be placed in home confinement under § 3624(c)(2) "as the Director determines appropriate," assuming "the Attorney General finds that emergency conditions will materially affect the functioning" of the BOP. CARES Act, Pub. L. 116-136, Div. B, Title II, § 12003(b)(2) (2020). However, the BOP's authority in this regard is limited to "the covered emergency period." *Id.* The BOP's authority expires "30 days after the date on which the national emergency declaration terminates." *Id.* § 12003(a)(2). After the CARES Act was enacted, the Attorney General issued a memo instructing the BOP to "immediately review all inmates who have COVID-19 risk factors" beginning with those who are housed at facilities where "COVID-19 is materially affecting operations." Office of Att'y Gen., *Increasing Use of Home Confinement at Institutions Most Affected by COVID-19* (Apr. 3, 2020). The BOP has acted on the Attorney General's guidance, including one case in which a sentenced prisoner was released to home confinement after serving less than half his sentence from a facility that reported no positive COVID-19 cases at the time of his release. *See* Hannah Albarazi, *Paul Manafort Seeks Prison Release Over COVID-19 Fears*, Law360 (Apr. 14, 2020), https://www.law360.com/articles/1263706/paul-manafort-seeks-prison-release-over-covid-19-fears (noting that the prisoner's counsel had argued that the CARES Act "broadens the authority" of the BOP to release prisoners to home confinement); Khorri Atkinson, *Paul Manafort Released From Prison Amid COVID-19 Fears*, Law360 (May 13, 2020), https://www.law360.com/articles/1273090/paul-manafort-released-from-prison-amid-covid-19-fears.

[3]  The Sentencing Guidelines also require that to be granted a reduction of sentence under 18 U.S.C. § 3582(c)(1)(A), the defendant must not pose "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2).

1   and compelling reasons," even though that policy statement was issued before Congress passed

2   the FSA and authorized defendants to file compassionate release motions).  However, a large and

3   growing number of district courts across the country have concluded that because the Sentencing

4   Commission has not amended the Guidelines since the enactment of the FSA, courts are not

5   limited by the pre-FSA categories described in U.S.S.G. § 1B1.13 in assessing whether

6   extraordinary and compelling circumstances are presented justifying a reduction of sentence

7   under 18 U.S.C. § 3582(c).  *See, e.g.*, *United States v. Parker*, __ F. Supp.3d __, 2020 WL

8   2572525, at *8–9 (C.D. Cal. May 21, 2020) (collecting cases); *United States v. Rodriguez*, 424

9   F.Supp.3d 674, 681 (N.D. Cal. 2019).

10          In the past, when moving for relief under 18 U.S.C. § 3582(c), it was recognized that the

11   defendant bore the initial burden of demonstrating that a sentence reduction was warranted.  *See*

12   *United States v. Sprague*, 135 F.3d 1301, 1306–07 (9th Cir. 1998).  Although the Ninth Circuit

13   has not specifically addressed the question of which party bears the burden in the context of a

14   motion for compassionate brought pursuant to § 3582(c) as amended by the FSA, district courts

15   that have done so have agreed that the burden remains with the defendant.  *See, e.g.*, *United*

16   *States v. Greenhut*, No. 2:18-cr-00048-CAS, 2020 WL 509385, *1 (C.D. Cal. Jan. 31, 2020);

17   *United States v. Van Sickle*, No. 18-cr-0250-JLR, 2020 WL 2219496, *3 (W.D. Wash. May 7,

18   2020).

19                                            **ANALYSIS**

20          As one district court has summarized, in analyzing whether a defendant is entitled to

21   compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), it must be determined whether a

22   defendant has satisfied three requirements:

23                  First, as a threshold matter, the statute requires defendants to exhaust
                 administrative remedies.  18 U.S.C. § 3582(c)(1)(A).  Second, a
24               district court may grant compassionate release only if "extraordinary
                 and compelling reasons warrant such a reduction" and "that such
25               reduction is consistent with applicable policy statements issued by
                 the Sentencing Commission.  *Id*.  Third, the district court must also
26               consider "the factors set forth in Section 3553(a) to the extent that
                 they are applicable."  *Id*.

27

28   *Rodriguez,* 424 F.Supp.3d at 680; *see also United States v. Ramirez-Suarez*, 16-CR-00124-LHK-

4, 2020 WL 3869181, at *2 (N.D. Cal. July 9, 2020); *Parker*, 2020 WL 2572525, at *4; *United States v. Trent*, Case No. 16-cr-00178-CRB-1, 2020 WL 1812242, at *2 (N.D. Cal. Apr. 9, 2020) (noting that as to the third factor, release must be "consistent with" the sentencing factors set forth in §3553(a)).

## I.     Exhaustion

As an initial matter, the court finds that defendant Alaniz has satisfied the requirement that he first exhaust his administrative remedies with the BOP before bringing his motion for compassionate release.  It is true that defendant submitted his request for compassionate release to the BOP on April 24, 2020 and filed this pending motion only thirteen days later, on May 7, 2020.[4]  (*See* Doc. Nos. 168; 169-13 at 2; 171 at 17.)  However, the government agreed to a stay of the pending motion until the required 30 days had elapsed—which it now has—and, accordingly, the court deems § 3582(c)(1)(A)'s exhaustion requirement met. (Doc. No. 171 at 17.)

## II.     Extraordinary And Compelling Reasons

According to the Sentencing Commission's policy statement, "extraordinary and compelling reasons" warranting compassionate release may exist based on a defendant's medical conditions, age and other related factors, family circumstances, or "other reasons."  U.S.S.G. § 1B1.13, cmt. n.1 (A)–(D).  Even though the catch-all of "other reasons" was included in the policy statement at a time when only the BOP could bring a compassionate release motion, courts have agreed that it may be relied upon by defendants bringing their own motions under the FSA. *See, e.g.*, *United States v. Kesoyan*, No. 2:15-cr-00236-JAM, 2020 WL 2039028, at *3–4 (E.D. Cal. Apr. 28, 2020) (collecting cases).

---

[4]  Defendant contends that he requested compassionate release from the BOP on April 10, 2020. (Doc. No. 174.)  The court has examined the request that defendant submitted to the BOP on April 10, 2020.  In that document, defendant requested to be released to home confinement under § 3624(c)(2) and the CARES Act, not § 3582(c)(1)(A).  (Doc. No. 169-12 at 2.)  A request for home confinement under § 3624(c)(2) is distinct from one for compassionate release under § 3582(c)(1)(A), and it cannot be expected that the BOP evaluate a request for the former under the standards governing the latter.  *See United States v. Reid*, No. 17-cr-00175-CRB-1, 2020 WL 1904598, at *3 n.4 (N.D. Cal. Apr. 18, 2020); *see also United States v. Carlucci*, No. 2:10-cr-00464-KHV, 2020 WL 2527013, at *2 (D. Ariz. May 18, 2020).

The medical condition of a defendant may warrant the granting of compassionate release by the court where the defendant "is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory)," though "[a] specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required." U.S.S.G. § 1B1.13, cmt. n.1(A)(i). Non-exhaustive examples of terminal illnesses that may warrant a compassionate release "include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia." *Id.* In addition to terminal illnesses, a defendant's debilitating physical or mental condition may warrant compassionate release, including when:

> The defendant is
>
> (I)   suffering from a serious physical or medical condition,
>
> (II)  suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

*Id.* at cmt. n.1(A)(ii). Where a defendant has moderate medical issues that otherwise might not be sufficient to warrant compassionate release under ordinary circumstances, many courts have concluded that the risks posed by COVID-19 tip the scale in favor of release when the particular circumstances of a case are considered in their totality. *See, e.g., Parker,* 2020 WL 2572525, at *9–10 ("Since the onset of the COVID-19 pandemic, courts have determined that inmates suffering from conditions such as hypertension and diabetes are now at an even greater risk of deteriorating health, presenting 'extraordinary and compelling' circumstances that may justify compassionate release.") (collecting cases); *United States v. Rodriguez*, No. 2:03-cr-00271-AB, 2020 WL 1627331 at *10–11 (E.D. Pa. Apr. 1, 2020) ("Without the COVID-19 pandemic—an undeniably extraordinary event—Mr. Rodriguez's health problems, proximity to his release date, and rehabilitation would not present extraordinary and compelling reasons to reduce his sentence. But taken together, they warrant reducing his sentence.").

/////

6

1      Compassionate release may also be warranted based on a defendant's age and other

2   related factors.  Thus, "extraordinary and compelling reasons" exist where a "defendant (i) is at

3   least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because

4   of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of

5   imprisonment, whichever is less."  U.S.S.G. § 1B1.13, cmt. n.1(B).  In determining a defendant's

6   projected release date, courts may take into account any "good time credits" awarded to the

7   defendant by the BOP for "exemplary" behavior in prison as set forth in 18 U.S.C. § 3624(b)(1).

8   *See, e.g.*, *United States v. Burrill*, No. 17-cr-00491-RS, 2020 WL 1846788, at *1 n.1 (N.D. Cal.

9   Apr. 10, 2020).

10      Here, defendant argues that extraordinary and compelling reasons exist for his

11   compassionate release because:  1) he suffers from chronic lung and heart issues, including

12   asthma; 2) COVID-19 is a deadly virus that the BOP has been unable to manage effectively,

13   especially under the environmental conditions present in its prisons; and 3) he is a rehabilitated,

14   non-violent offender posing no danger to the public.  (Doc. No. 169 at 3–8, 16–17.)  The

15   government counters that:  1) defendant has not shown that his asthma is severe enough to be a

16   high-risk factor for suffering serious complications were he to contract COVID-19; 2) defendant

17   continues to pose a danger to the public due to his gang membership and recidivist tendencies; 3)

18   the BOP has been able to adequately address and manage his health conditions; 4) defendant has

19   failed to address any of the applicable factors under 18 U.S.C. § 3553(a) and has served a mere

20   quarter of his sentence; 5) defendant has already been infected with and recovered from the

21   COVID-19 virus; and 6) defendant has failed to present an adequate release plan.  (Doc. No. 171

22   at 19–24.)  Having reviewed the relevant considerations, the court concludes that defendant has

23   not demonstrated extraordinary and compelling reasons justifying compassionate release pursuant

24   to § 3582(c)(1)(A).

25      First, the court is unable to conclude that defendant's medical conditions justify a

26   reduction of his sentence.  Defendant, who is only thirty years old, argues that he suffers from

27   chronic lung and heart issues that expose him to a higher risk of serious complications from

28   COVID-19.   (Doc. Nos. 169 at 3–5; 174 at 4–5.)  He also contends that his medical records show

1   he suffers from "moderate to severe" asthma, (Doc. No. 174 at 5), which, according to the

2   Centers for Disease Control and Prevention, creates a "higher risk of getting very sick from

3   COVID-19."  Centers for Disease Control and Prevention, People with Moderate to Severe

4   Asthma, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/asthma.html (last

5   visited July 18, 2020); *see also Woolem v. United States*, No. 1:13-cr-00471-SOM, 2020 WL

6   2820140, at *5 (D. Haw. May 29, 2020) (collecting medical guidance regarding the interaction

7   between asthma and COVID-19).  However, the court's review of defendant's medical records

8   did not reveal a diagnosis of "moderate to severe" asthma, let alone any information about how

9   his asthma is currently being controlled.   (See Doc. No. 178.)  Absent such information,

10  defendant's request for compassionate release is not adequately supported and the court cannot

11  properly evaluate it.  *See Woolem*, 2020 WL 2820140, at *5 ("[T]he court does need to consider

12  how well even moderate or severe asthma is or is not being controlled by medication or other

13  treatment, as well as any effect the treatment might have on complications arising from COVID-

14  19."); *see also United States v. Cisneros*, No. 1:99-cr-00108-SOM, 2020 WL 3065103, at *3 (D.

15  Haw. June 9, 2020) (same).  The court further notes that it appears that the medical staff at FCI

16  Lompoc has thus far been able to treat defendant's respiratory issues.  For example, defendant

17  does represent that after he experienced difficulty breathing in late 2019, medical staff at FCI

18  Lompoc prescribed (and apparently continues to provide) him with medication and breathing

19  treatments for his condition.  (Doc. No. 169-15 at 4.)  This weighs against defendant's pending

20  request for a reduction of his sentence because "[c]hronic conditions that can be managed in

21  prison are not a sufficient basis for compassionate release."  *United States v. Ayon-Nunez*, No.

22  1:16-cr-00130-DAD, 2020 WL 704785, at *3 (E.D. Cal. Feb. 12, 2020); see also U.S.S.G. §

23  1B1.13, cmt. n.1(A)(ii).

24         Second, defendant has already contracted COVID-19 and, fortunately, is now considered

25  to have recovered from the virus.  (Doc. No. 171 at 24.)  As a result, granting him release

26  arguably "will not provide him with the protection sought by his motion:  relief from the risk of

27  contracting COVID-19."  *United States v. Russo*, 1:16-cr-00441-LJL, 2020 WL 1862294, at *8

28  (S.D.N.Y. Apr. 14, 2020); *see also United States v. Purry,* No. 2:14-cr-00332-JAD-VCF, 2020

WL 2773477, at *1 (D. Nev. May 28, 2020) ("The premise of [defendant's] request was that his release would help prevent him from contracting the virus.  That need vanished when [defendant] tested positive for the virus.").  Although defendant argues that being infected with COVID-19 does not confer immunity to subsequent re-infection, (Doc. No. 174 at 10–11), the court notes that "many questions remain unanswered about . . . potential recurrence." *United States v. Phillips*, No. 2:19-cr-0081-KJM, 2020 WL 2084808, at *3 (E.D. Cal. Apr. 30, 2020); *see also United States v. McCollough*, No. 2:15-cr-00336-PHX-DLR, 2020 WL 2812841, at *2 (D. Ariz. May 29, 2020) ("Arguments that the [COVID-19] test results may be inaccurate or that Defendant could suffer reinfection are not persuasive and the Court will not speculate about these possibilities.").

The court certainly recognizes that FCI Lompoc initially failed to control the outbreak of COVID-19 at that institution, as the majority of its inmates have tested positive for the virus.  *See United States v. Connell*, __ F.Supp.3d __, 2020 WL 2315858, at *6 (N.D. Cal. May 8, 2020).  (*See also* Doc. No. 174 at 7.)  That situation is obviously an extremely serious one.  However, it appears that the prison staff is now adequately monitoring and caring for defendant Alaniz, who received treatment for COVID-19 and has since recovered.  (Doc. No. 171 at 9.)  Thus, even if defendant could be re-infected, the court cannot find that the current conditions in FCI Lompoc are an "extraordinary or compelling circumstance" warranting defendant's early release after serving only 20 months of the 78-month prison sentence imposed.  *See United States v. Eddings*, No. 2:09-cr-00074-JAM-AC, 2020 WL 2615029, at *2 (E.D. Cal. May 22, 2020) (concluding that FCI Lompoc is now able to adequately monitor and care for its inmates); *see also Purry*, 2020 WL 2773477, at *2 (noting that FCI Lompoc "has established and implemented an extensive protocol in response to the outbreak, including the installation of a hospital care unit at the facility and universal testing").

For all these reasons, the court concludes that defendant has not met his burden of demonstrating extraordinary and compelling reasons for compassionate release under § 3582(c)(1)(A) and therefore his motion will be denied.

/////

9

1    **III.    Consistency With the § 3553(a) Factors**

2              Finally, even if defendant Alaniz's motion were supported by a showing of extraordinary

3    and compelling reasons for his compassionate release, the undersigned is not persuaded that the

4    requested reduction in sentence would be consistent with the sentencing factors set forth at 18

5    U.S.C. § 3553(a).[5]  *See Parker,* 2020 WL 2572525, at *11.

6              First, as noted above, defendant is currently serving a 78-month sentence for conspiracy to

7    distribute and possess with intent to distribute methamphetamine after being sentenced on

8    September 10, 2018.  (See Doc. No. 171 at 7, 21–22, 23.)  At sentencing, defendant Alaniz was

9    held responsible for 448 grams of actual methamphetamine and 169 grams of methamphetamine.

10   (Doc. No. 93 at 10.)  With his acceptance of responsibility acknowledged, the U.S. Probation

11   Office determined that his total offense level was 29, that his criminal history category was I, and

12   his advisory sentencing guideline range therefore called for a term of imprisonment of 87 to 108

13   months.[6]  (*Id*. at 23.)  The probation officer recommended a mid-guideline sentence of 97 months

14   in BOP custody.  (*Id*.)  After considering the § 3553(a) factors, the undersigned varied downward

15   from the advisory guideline range and sentenced defendant to a 78-month term of imprisonment.

16   (Doc. No. 95.)

17   /////

18   _____

19   [5]  Title 18 U.S.C. § 3553(a) provides that, in determining the sentence to be imposed, the court
     shall consider:  the nature and circumstances of the offense and the history and characteristics of
20   the defendant; the need for the sentence imposed to reflect the seriousness of the offense, promote
     respect for the law, provide just punishment for the offense, afford adequate deterrence, protect
21   the public from further crimes of the defendant and provide the defendant with needed
     educational or vocational training, medical care, or other correctional treatment in the most
22   effective manner; the kinds of sentences available; the kinds of sentence and the sentencing range
     established for the applicable category of offense committed by the applicable category of
23   defendant as set forth in the guidelines; any pertinent policy statement issued by the Sentencing
     Commission; the need to avoid unwarranted sentence disparities among defendants with similar
24   records who have been found guilty of similar conduct; and the need to provide restitution to any
     victims of the offense.
25

26   [6]  Due to typographical error the presentence report erroneously listed the advisory guideline
     range as 87–135 months at one point, (Doc. No. 98 at 5), and correctly reflected that range as 87–
27   108 months later in the report, (*id*. at 23).  The court believes that the typographical error was
     noted on the record at the time of sentencing, and it is undisputed that the latter was the correct
28   advisory sentencing guideline range in defendant's case.

Defendant Alaniz's criminal history placed him in category I of the Sentencing Guidelines, and there were no identifiable victims of his drug trafficking crime, which also did not involve the use of firearms. However, he had suffered prior drug convictions and the case agent identified him during the investigation as a supplier of methamphetamine and a Bulldogs gang member. (See Doc. Nos. 98 at 9; 171 at 23.) In light of this background, consideration of the risk of recidivism on the part of the defendant weighs to some degree against the granting of compassionate release. *See, e.g.*, *United States v. Drummondo-Farias*, No. 1:12-cr-001740-JMS, 2020 WL 2616119, at *6 (D. Haw. May 19, 2020) (denying compassionate release to a defendant in part because had been twice convicted of drug offenses).

In addition, the court is not persuaded that defendant has established his post–offense rehabilitation since his sentencing less than two years ago. Defendant argues that while imprisoned at FCI Lompoc, he has completed "a drug program and attends both school and any available program he may enter." (Doc. No. 169 at 17.) While these efforts are laudable, defendant has provided almost no description of the activities he had engaged in since he began serving his sentence or of how much work and time he has dedicated to them. *Cf. Parker*, 2020 WL 2572525, at *11 (granting a defendant compassionate release in part because he demonstrated rehabilitation during his imprisonment by earning two associate degrees, participating in other continuing education courses and working as an education instructor, "suicide companion," and career services clerk) (collecting cases). Moreover, even if defendant Alaniz had demonstrated his full rehabilitation since September 10, 2018, rehabilitation alone is not enough to warrant compassionate release. *See* 28 U.S.C. § 994(t); U.S.S.G. § 1B1.13, cmt. n.3.

Lastly, it appears that the granting of compassionate release to defendant Alaniz would potentially create an unwarranted sentencing disparity among the defendants in this case. *See* 18 U.S.C. § 3553(a)(6). As noted, defendant Alaniz was sentenced to 78 months of imprisonment for his offense, a downward variance from the guideline range calling for a term of imprisonment of 87 to 108 months. (*Compare* Doc. No. 95, *with* Doc. No. 98 at 5.) *See* U.S.S.G. Ch. 5, Pt. A. Defendant Jesse Mendoza, who according to the investigating case agent was supplied with

11

1   methamphetamine by defendant Alaniz and was determined to have an advisory guideline range

2   of 168–210 months, was sentenced to a term of imprisonment of 152 months.  (Doc. Nos. 157,

3   162.)  Defendant Christopher Valdez, who was determined to have an offense level of 30 and a

4   criminal history category of II with an advisory guideline range of 108–135 months, was

5   sentenced to a 102-month term of imprisonment.  (Doc. Nos. 142, 154.)  As of the date of this

6   order, defendant Alaniz has served only 20 months of the 78-month sentence, or approximately

7   25%.  *See United States v. Lonich*, No. 1:14-cr-00139-SI-1, 2020 WL 26148743, at *3 (N.D. Cal.

8   May 21, 2020) (denying motions for compassionate release, noting, "the Court finds it significant

9   that defendants have served far less than half of their sentences"); *United States v. Shayota,* No.

10  1:15-cr-00264-LHK-1, 2020 WL 2733993 at *6 (N.D. Cal. May 26, 2020) ("'The length of the

11  sentence remaining is an additional factor to consider in any compassionate release analysis,'

12  with a longer remaining sentence weighing against granting any such motion." (quoting *Connell*,

13  2020 WL 2315858, at *6)).  Were defendant Alaniz's sentence reduced to 20 months as

14  requested, it would simply create too great of disparity compared to the sentences of his co-

15  defendants, a disparity that would not be warranted under the facts of this case.  Finally, in the

16  court's view, a 20-month sentence would also not adequately reflect the seriousness of

17  defendant's offense of conviction, promote respect for the law, provide just punishment, or afford

18  adequate deterrence to criminal conduct.  *See Purry*, 2020 WL 2773477, at *2; *Shayota*, 2020 WL

19  2733993 at *5; 18 U.S.C. § 3553(a).[7]

20  _____

21  [7]   Defendant contends that he is not requesting a reduction of his sentence but rather an order that
    he be allowed to "fulfill his obligation under Strict Home Confinement."  (Doc. No. 174 at 6–7.)
22  However, the CARES Act "'authorizes the BOP—not courts—to expand the use of home
    confinement' under 18 U.S.C. § 3624(c)(2)."  *United States v. Fantz*, No. 5:14-cr-32-BR, 2020
23  WL 3492028, at *1 (E.D.N.C. June 26, 2020) (quoting *United States v. Nash*, No. 19-40022-01-
    DDC, 2020 WL 1974305, at *2 (D. Kan. Apr. 24, 2020) (collecting cases)); *see also United*
24  *States v. Rice,* Case No. 12-cr-818-PJH, 2020 WL 3402274, at *4 (N.D. Cal. June 19, 2020)
    (denying a defendant's request for release to home confinement made in conjunction with his
25  motion for compassionate release because "the court has no authority to designate the place of
    confinement" because the "Bureau of Prisons has the statutory authority to choose the locations
26  where prisoners serve their sentence."); *United States v. Gray*, No. 4:12-CR-54-FL-1, 2020 WL
    1943476, at *3 (E.D.N.C. Apr. 22, 2020) (holding that the CARES Act "does not authorize the
27  court to order defendant's placement in home confinement").  The district court may only impose
    home detention as a condition of supervised release, rather than as part of a sentence of
28

1

**CONCLUSION**

2          Because defendant Alaniz has failed to demonstrate that "extraordinary and compelling"

3    reasons exist justifying his release under 18 U.S.C. § 3582(c)(1)(A) or that his release from

4    imprisonment at this time would be consistent with the sentencing factors set forth in 18 U.S.C. §

5    3553(a), his motion for compassionate release (Doc. No. 169) is denied.

6    IT IS SO ORDERED.

7        Dated:   **July 18, 2020**                                                        _____

8                                                                                                       UNITED STATES DISTRICT JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27    _____

28    imprisonment.  *See United States v. Connell*, __ F.Supp.3d __, 2020 WL 2315858, at *5, n.6 &
     *7 (N.D. Cal. May 8, 2020).

13